**FILED**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

MAY 1 9 2006

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO

SLS INTERNATIONAL, INC.,           )
                                   )
                Plaintiff,         )
                                   )
        v.                         )
                                   )  Case No.
ADONE MEDIA, INC. and              )
                                   **4    06CV00811RWS**
JAMES NEUMANN, an individual,      )
                                   )
                Defendants.        )
                                   )

## COMPLAINT

Plaintiff SLS International, Inc. ("SLS"), by and through its counsel, alleges against

Defendants AdOne Media, Inc., ("AdOne") and James Neumann ("Neumann") as follows:

### NATURE OF THE ACTION

1.     SLS brings this action against Neumann pursuant to the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), and for damages against AdOne and

Neumann for breaches of contract, conversion, fraud, and unjust enrichment. SLS also seeks to

recover its attorney's fees and other costs incurred in this lawsuit.

2.     This Complaint arises from Neumann's fraudulent scheme to use AdOne

to collect false advertising fees from SLS and other victims and to keep that money for his own

gain rather than using it to pay for legitimate advertising for which AdOne's clients contracted.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 18 U.S.C. §§ 1964(c), 1965(a)-(b), 28 U.S.C. § 1367, and pursuant to principles of ancillary and pendent jurisdiction.

4.     Pursuant to 28 U.S.C. § 1391, venue is proper in this jurisdiction because a substantial part of the events or missions giving rise to the claims herein occurred in this district and because the defendants reside in this jurisdiction.

5.     In connection with the acts alleged in this Complaint, defendants AdOne and Neumann, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails and wire transmissions in interstate commerce. The same defendants engaged in interstate commerce and activities that affect interstate commerce.

## THE PARTIES

6.     SLS is a Delaware corporation with its principal place of business at 1650 W. Jackson, Ozark, Missouri 65721. SLS is in the business of designing, manufacturing, and installing loudspeaker systems.

7.     On information and belief, AdOne is a Nevada corporation with its principal place of business at 618 Spirit Drive, Suite 100, Chesterfield, Missouri 63005. AdOne acts as a "broker" of outdoor market advertising. AdOne purports to place advertising for its clients on signs, billboards, banners, mobile billboards, and at sporting events.

8.     AdOne also exists for the purpose of fraudulently collecting fees from its clients that AdOne's principal, James Neumann, keeps for himself rather than using the fees to pay for legitimate advertising for AdOne's clients.

2

9.      James Neumann is the President, Secretary, and sole Director of AdOne. On information and belief, Neumann resides at 2109 Saddlebred Court, Chesterfield, Missouri 63005-5406.

## FACTUAL BACKGROUND

### Introduction

10.     AdOne is a media company that specializes in "outdoor market" advertising and advertising placement. AdOne holds itself out as a provider of large-scale banners, scrolling signs, mobile billboards, and vehicle wraps as well as more traditional signage. AdOne also purports to arrange for advertising placements for its clients.

11.     Beginning in or about January 2005, AdOne's principal, James Neumann, engaged in multiple schemes to extract improper fees from AdOne's clients, including SLS, for purportedly placing advertisements in various locations throughout the United States. As a regular part of its business, AdOne funneled those fees to Neumann rather than using the fees to place the advertisements or to pay advertisers or "vendors."

12.     Neumann then transmitted and received his ill-gotten funds across interstate lines in violation of 18 U.S.C. §§ 2314 and 2315.

13.     Neumann accomplished his schemes through multiple acts of mail and wire fraud, which, upon information and belief, involved multiple customers, including at least SLS and Fine Light Media, Inc., and which included at least the following acts:

- Mailing and/or transmitting by electronic communications multiple phony invoices for services that were never performed, or that were only partly performed;

- Transmitting electronic communications containing letters that fraudulently confirmed placement of contracted-for advertising that was never placed or only partially placed;

3

- Sending multiple letters through the United States mails fraudulently confirming that AdOne had placed contracted-for advertising that was never placed or only partially placed;

- Engaging in multiple telephone conversations in which James Neumann or other AdOne employees fraudulently confirmed placement of contracted-for advertising that was never placed or only partially placed; and

- Sending multiple letters through the United States mails and multiple electronic transmissions containing "progress reports" that fraudulently indicated advertising had run as contracted.

### SLS's Business Relationship With Neumann and AdOne

14. In January 2005, SLS began placing orders with AdOne to arrange outdoor advertising placements for SLS. Pursuant to contracts between the two companies, AdOne was to procure outdoor advertising opportunities for SLS, such as placements within sports arenas, on athletic uniforms, and on banners placed in commercial districts. SLS was to pay AdOne directly for its services and for actual placement of the advertisements. AdOne in turn was required to submit payment to the end venue where the advertising was to be located (the "End Advertisers").

15. The parties entered into oral and/or written contracts setting forth the terms of the orders SLS placed with AdOne.

16. Neumann, on behalf of AdOne, negotiated and entered into a portion of the contracts between SLS and AdOne. Over the course of approximately 10 months, SLS placed approximately 22 orders with AdOne for outdoor advertising.

### Neumann's and AdOne's Schemes to Defraud SLS

17. Many of the advertising campaigns that AdOne purported to handle for SLS did not run or did not run as promised. Instead, Neumann pocketed much of the money SLS paid AdOne by not purchasing advertising or purchasing less advertising than was promised so

4

that he could pay out less of AdOne's money and keep the difference. Through AdOne, Neumann participated in several such schemes.

**Advertisements in Hockey Arenas**

18. For example, SLS focused a significant portion of its advertising in sports arenas. One such advertising campaign involved placing "dasher board" ads at hockey arenas within the United Hockey League ("UHL") during the 2005 season. Dasher board ads are advertisements along the wall that encloses the actual ice on which the game is played.

19. The UHL is considered the second most preeminent hockey league in the United States and Canada, second only to the National Hockey League or "NHL". The UHL campaign was particularly important to SLS because the NHL was on strike during the 2005 season. Thus, SLS's ads were to run in what was then the most preeminent hockey league that was actively playing games. SLS saw the opportunity to be in UHL stadiums as an opportunity to reach consumers that normally may have gone to NHL games but who were attending UHL games while the NHL was on strike.

20. Rather than run SLS's advertisements only in UHL arenas as contracted, AdOne contracted with several non-UHL ice arenas where smaller, less-known hockey teams played in front of much smaller crowds or where there was no professional hockey at all. Those ice arenas charged significantly less for advertisements than a UHL hockey arena would have charged.

21. AdOne nevertheless invoiced SLS for running "Dasher board ads for 6 UHL Hockey arenas that include Rockford – IL, Richmond – VA, Motor City –MI, Fort Wayne – IN, Danbury – CT and Adirondack – NY." On or about February 18, 2005, AdOne transmitted invoice 2112-17 through the United States mails in furtherance of Neumann's scheme to collect

5

the difference in advertising prices between the non-UHL and UHL arenas so that Neumann could fraudulently keep several thousand dollars for himself.

22. AdOne also transmitted by electronic wire and through the United States mail several pictures purporting to demonstrate that AdOne had placed SLS's advertisements in UHL hockey arenas. Although those pictures show SLS advertisements in hockey arenas, SLS later learned that the arenas were not UHL arenas, but rather were smaller local arenas that did not host UHL teams.

23. For example, on July 15, 2005, AdOne sent by electronic transmission and/or through the United States mail a "completion report" that purported to show an SLS banner in a UHL arena in Richmond, Virginia. AdOne fraudulently failed to disclose that the banner actually was placed in a civic hockey arena that hosts general public skating and local youth and adult hockey leagues rather than professional hockey within the UHL. The July 15 e-mail was fraudulent because no SLS banner ever ran in a UHL arena in Richmond.

24. AdOne also did not place SLS advertisements in UHL hockey arenas in Rockford, Illinois; Ft. Wayne, Indiana; or Adirondack, New York, as contracted. As with the Richmond, Virginia advertisements, AdOne placed the Rockford and Adirondack advertisements in civic hockey arenas that host general public skating and local youth and adult hockey leagues rather than professional hockey within the UHL. On July 15, 2005, and on July 26, 2005, AdOne transmitted e-mails to SLS purporting to confirm that an SLS banner ran in a UHL arena in Rockford and Adirondack respectively. AdOne sent another e-mail purporting to confirm placement of a banner in a UHL hockey arena in Rockford on July 18, 2005. In or about June 2005, AdOne also sent a facsimile to SLS purporting to confirm that an SLS banner dasher board

advertisement had been placed in a UHL arena in Ft. Wayne. All of the above e-mails and facsimiles were fraudulent because no such banners were actually placed in UHL stadiums.

25.     By placing the dasher board advertisements in less expensive ice arenas, Neumann was able to increase his profit and keep more of SLS's money for himself.

26.     Neumann and AdOne used the UHL campaign to further harm SLS by charging SLS for more dasher board advertisements than AdOne actually placed. On or about February 3, 2005, AdOne transmitted an invoice to SLS by United States mail and/or electronic transmission that purported to charge SLS $45,000 for placement of seven dasher board ads at the Summit Center in St. Louis, Missouri.

27.     Rather than placing all seven dasher boards, AdOne placed only one or two dasher boards. Neumann then kept the difference in money that made up the price difference between one or two dasher boards and the seven boards for which SLS had contracted.

28.     In addition to the above electronic communications, Neumann and AdOne engaged in multiple telephone conversations in which Neumann and/or AdOne employees fraudulently confirmed the correct placement and running of SLS advertisements in UHL hockey arenas.

## Advertisements at Youth Soccer Games

29.     In another scheme to siphon away several thousand dollars of SLS's money, Neumann used AdOne to charge SLS for advertising that was supposed to run at youth soccer games but never did.

30.     On or about March 31, 2005, AdOne transmitted by United States mail and/or electronic communication invoice number 2112-42, which purported to charge SLS $96,000 for printing 15,000 banners measuring 3 feet by 8 feet. The banners were supposed to

hang at youth soccer league games throughout the country. Instead, AdOne printed and placed only *two* banners at youth soccer league games in the Chicago area and a third banner hung in Neumann's office. The remaining 14,997 banners never were printed or displayed. AdOne nevertheless sent an e-mail on July 15, 2005 once again purporting to confirm that 15,000 SLS banners had been placed with youth soccer teams to hang at their games. As with the invoice, that e-mail was fraudulent because AdOne only printed three banners total.

31.     In an effort to further the fraud upon SLS, AdOne arranged for pictures to be taken of youth soccer teams holding banners displaying SLS advertising. On or about July 8, 2005, AdOne transmitted approximately nine pictures to SLS by electronic transmission under the pretense that the pictures proved that 15,000 banners had been hung at youth soccer games. In fact, the pictures show several youth soccer teams holding only the same one or two banners that AdOne actually did produce.

32.     In still further efforts to perpetuate the fraud upon SLS, Jim Neumann conspired with an unknown individual at the Northern Independent Soccer League ("NISL") to concoct a letter from the NISL to Neumann that purported to confirm that 15,000 SLS banners had been received by the NISL and distributed to various teams. On or about November 10, 2005, Neumann then transmitted a copy of that letter to SLS by United States mail and/or by electronic transmission. Although the letter states that the NISL had received 15,000 banners, that statement was knowingly false and drafted for the sole purpose of misleading SLS to believe that it had received the advertisements for which it had paid.

33.     In addition to the above mailings and electronic communications, Neumann and/or other AdOne employees engaged in numerous telephone conversations with SLS and with an individual at the NISL in furtherance of Neumann's scheme.

8

## Advertisements at Major League Baseball Spring Training

34.     SLS also sought to advertise at Major League Baseball ("MLB") spring training games. SLS contracted with AdOne to place advertisements at MLB spring training games in Tampa, Port Lucie, Vero Beach, Jupiter, Clearwater, Kissimmee, Winter Haven, Ft. Lauderdale, and Sarasota, Florida and in Surprise, Arizona. On February 13, 2005, Neumann sent SLS an e-mail suggesting that SLS place advertisements for the 2005 MLB spring training season in 17 stadiums. That e-mail was fraudulent because Neumann never intended for SLS's advertisements to run during the 2005 spring training season.

35.     Although SLS contracted to have its advertising run during the 2005 spring training season, and paid $33,000 for that opportunity, AdOne on several occasions failed to place advertisements for spring training, placing advertisements that ran instead at minor league baseball games after MLB spring training had ended.

36.     For example, although SLS paid to have its advertising placed at the St. Louis Cardinals spring training games at Roger Dean Stadium in St. Lucie, Florida, AdOne failed to make that placement. Instead, AdOne contracted with Roger Dean Stadium to place ads during that city's minor league season.

37.     AdOne nevertheless transmitted by wire communication invoice number 2112-24 purporting to charge SLS for advertisements placed in Roger Dean Stadium during the 2005 MLB spring training season.

## Outdoor Banner Advertisements

38.     In Neumann's most brazen scheme to misappropriate SLS's money, AdOne fraudulently contracted to place an SLS banner in a commercial district in South Beach, Florida that never actually ran. On or about March 24, 2005, AdOne transmitted invoice number

9

2112-36 for \$8,500 by wire communication to SLS for placement of that banner during April, May, and June 2005.

39. AdOne never placed the banner. Instead, in anticipation of a meeting between AdOne and SLS in which AdOne was to review its work for SLS, Neumann asked an AdOne employee to fly to Florida to put the banner up in South Beach just long enough for that employee to take picture of the banner. Neumann instructed the employee to remove the banner after taking a picture of it. Neumann also instructed the employee to change the date on the camera used to take the picture so that it would appear that the banner had been in place at the end of March 2005, when the original contract was to have begun.

40. On or about July 8, 2005, after obtaining the pictures, AdOne sent copies of the pictures by electronic transmission to SLS in an attempt to mislead SLS into believing that the banner had been in place during April 2005 and would be in place during July and August 2005. AdOne sent another e-mail to SLS on July 15, 2005 purporting to confirm that the South Beach banner had been placed. In fact, the banner was never in place other than when an AdOne employee photographed it.

**Advertising at Major League Soccer Venues**

41. Arrowhead Stadium in Kansas City, Missouri, is the home of the Kansas City Wizards ("KC Wizards"), a professional soccer team playing in the Major League Soccer league. Through AdOne, SLS contracted for advertising that appeared in Arrowhead Stadium. SLS paid all required sums to AdOne, which was obligated to turn over final payment for the advertising to the KC Wizards.

42. On or about May 4, 2005, AdOne sent SLS an invoice through the United States mail purporting to charge SLS for the advertisements AdOne was supposed to place with

10

the KC Wizards. The invoice was fraudulent because it purported to indicate that the sponsorship SLS sought through the KC Wizards cost approximately $57,000 plus production costs. In fact, the sponsorship cost $18,000 plus production costs, meaning that Neumann pocketed a 68% commission rather than the 15% commission that is common within the advertising industry and which SLS understood AdOne would receive for placing the advertising.

43.    AdOne's overcharging for the KC Wizards campaign is not an isolated incident. As with the KC Wizards, AdOne charged SLS $57,000 for placing an advertising campaign with the professional soccer team, the San Jose Earthquakes. And as with the KC Wizards, that campaign cost only $18,000 for AdOne to place. Once again, Neumann pocketed the $39,000 difference for his own use. On or about May 4, 2005, AdOne sent an invoice by electronic transmission containing the fraudulent overcharge.

**Wrapped City Buses**

44.    SLS also contracted with AdOne to place advertisements on city buses in St. Louis and Springfield, Missouri. Although those advertisements generally ran, AdOne intentionally and fraudulently overcharged SLS for work that was never performed on that campaign.

45.    In an August 15, 2005 document sent from AdOne to SLS by electronic transmission and/or through the United States mail, AdOne charged SLS for several alleged expenditures that AdOne never made, including: $4,000 for down payments to drivers; $10,000 for down payments to installers; and $10,500 for materials. In addition, AdOne intentionally and fraudulently overcharged SLS by approximately $3,000 for "advertising dollars" and overstated the number of hours worked by approximately two-fold, resulting in an overcharge of $3,000.

11

46.     In an August 24, 2005 e-mail, AdOne sent an e-mail attaching a similar
spreadsheet containing a similar breakdown of the same false charges. That same day, AdOne
sent a different e-mail stating that it could not give SLS credit for payments already made
because that credit had been eroded by the charges for the down payments, materials, advertising
dollars and labor discussed in the preceding paragraph. Once again, those statements were false
because the charges AdOne was counting against the credit were completely false – the costs had
never been incurred.

## Other Victims of AdOne's Fraudulent Schemes

47.     In addition to harming SLS, Neumann's schemes through AdOne have
harmed several organizations that AdOne has not paid for advertising that did run. For example,
AdOne still has not paid a series of health clubs for SLS advertisements that ran in those clubs
but for which SLS paid AdOne to place. On information and belief, AdOne has failed to pay
End Advertisers on other SLS agreements as well.

48.     SLS repeatedly has requested that AdOne remit payment to these End
Advertisers. AdOne has refused, delayed, and/or falsely claimed that payment had been made,
despite AdOne's knowledge of the falsity of those statements.

49.     On information and belief, AdOne also fraudulently failed to place and run
advertising as contracted with an organization named Fine Light Media.

50.     AdOne's failure to pay the End Advertisers has harmed SLS. SLS has
expended considerable time and effort responding to inquiries from unpaid End Advertisers and
attempting to cause AdOne to make payments to End Advertisers. SLS also has lost the money
it paid to AdOne for the purported advertising opportunities that AdOne never placed. Finally,
as a result of AdOne's failure to pay End Advertisers, End Advertisers remain under the

12

impression that SLS debts, rather than AdOne debts, remain due and owing to the unpaid End Advertisers. That impression has harmed SLS's reputation within its industry and affects its ability to purchase advertising.

## Neumann's Money Laundering Scheme

51. In order to hide the money Neumann skimmed from AdOne's clients and End Advertisers, Neumann has set up related bank accounts under corporate names so that he can transfer corporate money between accounts for his own personal use. Neumann causes the money he obtains from his fraudulent schemes with AdOne to be transferred across state lines from Missouri to bank accounts in Illinois so that he may make personal use of those funds. Neumann created two separate companies to facilitate and hide those transfers: Install Group Corporation and Install Group Worldwide, Inc.

52. Install Group Corporation is a separate entity that is not formally affiliated with AdOne. Install Group Worldwide, Inc., however, was purchased by AdOne and now does business under the AdOne name. Neumann intentionally created the two companies to have similar names so that he could transfer money from AdOne to either company while at the same time confounding any investigation into the transfer of funds.

53. Neumann's scheme works as follows: AdOne, Install Group Corporation, and Install Group Worldwide, Inc. each maintain separate bank accounts at a LaSalle National Bank branch near Chicago, Illinois. Neumann has access to each account. Neumann causes AdOne to transfer funds to Install Group Corporation through an intra-bank transaction. Neumann maintains a debit card on the Install Group Corporation account, which allows him to deduct funds from that account at will. Neumann thus withdraws money from that account – money he fraudulently obtained from SLS – for his own personal use. Install Group Worldwide,

13

Inc. exists solely as a decoy. Because it shares a similar name with Install Group Corporation, Neumann explains away any suspicious transfers as transfers to Install Group Worldwide, Inc., because that company is affiliated with AdOne.

## COUNT I
## VIOLATIONS OF RICO § 1962(c)
## (Against Defendant Neumann)

54.     SLS repeats and realleges each allegation contained in paragraphs 1 through 53, above, as the allegations of this paragraph 54.

55.     AdOne was at all relevant times an enterprise engaged in the lawful business of placing outdoor advertising for its clients, and whose activities affect interstate commerce.

56.     James Neumann conducted and participated in the conduct of the AdOne enterprise for the unlawful purpose of defrauding AdOne's customers, including SLS, and End Advertisers and vendors. Specifically, Neumann conducted the AdOne enterprise in several schemes to fraudulently collect payments for advertising AdOne did not place or did not place as promised so that Neumann could keep any profits that resulted when AdOne kept those payments.

57.     The schemes Neumann orchestrated at AdOne which affected several victims were so numerous and pervasive that AdOne's regular way of conducting business revolved around Neumann's schemes to defraud AdOne's clients, including SLS.

58.     Pursuant to and in furtherance of those schemes, Neumann and AdOne committed several acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, including those discussed in paragraphs 21-24, 26-28, 30-33, 34-37, 38-40, 42-43, and 45-46, above.

14

59.     In addition, Neumann has transported and received misappropriated funds across interstate lines in violation of 18 U.S.C. §§ 2314 and 2315 as discussed in paragraphs 51-53, above.

60.     Neumann has directly and indirectly conducted and participated in the conduct of the AdOne enterprise's affairs through the pattern of racketeering described above in violation of 18 U.S.C. § 1962(c).

61.     The racketeering acts have been continuous and related, and are of such a nature that they would have tended to continue indefinitely, and thus constitute a pattern of racketeering pursuant to 18 U.S.C. § 1961(5).

62.     As the direct and proximate cause of the racketeering activities and violations of 18 U.S.C. § 1962(c), SLS has been injured in its business and property in that, without limitation, among other things, it has lost substantial monies and sales in connection with and as a result of its payments to AdOne for advertising placements that never ran or did not run as contracted.

## COUNT II
## VIOLATIONS OF RICO §1962(c)
### (Against Defendant AdOne)

63.     SLS repeats and realleges each allegation contained in paragraphs 1 through 53, above, as the allegations of this paragraph 63.

64.     At all relevant times, AdOne, Install Group Corporation, and Install Group Worldwide, Inc. were an association-in-fact and an "enterprise" engaged in, and whose activities affect interstate commerce.

15

65.     At all relevant times, AdOne and Install Group Corporation were an association-in-fact and an "enterprise" engaged in, and whose activities affect interstate commerce.

66.     At all relevant times, AdOne and Install Group Worldwide, Inc. were an association-in-fact and an "enterprise" engaged in, and whose activities affect interstate commerce.

67.     AdOne, agreed to and did conduct and participate in the conduct of these enterprises for the unlawful purpose of defrauding AdOne's customers. Specifically, AdOne conducted the enterprises pursuant to several schemes to fraudulently collect payments for advertising AdOne did not place or did not place as promised and to then transport that money across state lines to Install Group Corporation and Install Group Worldwide, Inc. in order to hide the money and/or funnel it to Neumann.

68.     Pursuant to and in furtherance of the fraudulent schemes, AdOne and its employees committed multiple acts of mail fraud and wire fraud including those discussed in paragraphs 21-24, 26-28, 30-33, 34-37, 38-40, 42-43, and 45-46, above.

69.     In addition, AdOne has transported and received misappropriated funds across interstate lines in violation of 18 U.S.C. §§ 2314 and 2315 as discussed in paragraphs 51-53, above.

70.     AdOne has directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering described above in violation of 18 U.S.C. § 1962(c).

16

71.     The racketeering acts have been continuous and related, and are of such a nature that they would have tended to continue indefinitely, and thus constitute a pattern of racketeering pursuant to 18 U.S.C. § 1961(5).

72.     As the direct and proximate cause of the racketeering activities and violations of 18 U.S.C. § 1962(c), SLS has been injured in its business and property in that, without limitation, among other things, it has lost substantial monies and sales in connection with and as a result of its payments to AdOne for advertising placements that never ran or did not run as contracted.

## COUNT III
## BREACH OF CONTRACT
### (Against Defendants Neumann and AdOne)

73.     SLS repeats and realleges each allegation contained in paragraphs 1 through 53, above, as the allegations of this paragraph 73.

74.     The various agreements for advertising placements between SLS and AdOne are valid and enforceable contracts.

75.     SLS has performed in full all of its obligations under its advertising contracts with AdOne.

76.     AdOne breached contracts by failing to remit final payments to the End Advertisers.

77.     Neumann breached contracts by failing to remit final payments to the End Advertisers.

78.     SLS has been harmed by AdOne and Neumann's numerous breaches of advertising contracts with SLS, in that, without limitation, among other things, SLS has lost substantial monies and sales in connection with and as a result of its payments to AdOne for advertising placements that never ran or did not run as contracted.

17

## COUNT IV
## CONVERSION
### (Against Defendants Neumann and AdOne)

79. SLS repeats and realleges each allegation contained in paragraphs 1 through 53, above, as the allegations of this paragraph 79.

80. SLS has a property right in the funds it entrusted AdOne to remit to the End Advertisers, and a right to the immediate possession of those funds.

81. SLS transferred funds to AdOne for the specific purpose of AdOne using those funds to pay End Advertisers for advertisement placements.

82. Neumann and AdOne have converted SLS's funds instead of transmitting those funds to the End Advertisers, despite its obligation under the contracts with SLS to pay those funds to the End Advertisers.

83. On November 2, 2005, SLS, through its President, made a written demand that AdOne return a specific portion of the converted funds to SLS.

84. SLS has been harmed by AdOne's conversion of SLS funds as set forth in greater detail above.

## COUNT V
## COMMON LAW FRAUD
### (Against Defendants Neumann and AdOne)

85. SLS repeats and realleges each allegation contained in paragraphs 1 through 53, above, as the allegations of this paragraph 85.

86. Throughout the negotiations of the advertising arrangement with SLS, AdOne and Neumann falsely represented to SLS that AdOne would accept payments from SLS and remit full payment to End Advertisers.

87. The false representation that AdOne would remit full payment to the End Advertisers on SLS's behalf was material.

18

88.     When AdOne made the false representations to SLS, AdOne and Neumann knew that the representations were false, and that AdOne would not remit full final payment to the End Advertisers as required by AdOne's agreements with SLS.

89.     In representing to SLS that it would remit payment to the End Advertisers, AdOne and its agents, including Neumann, intended that SLS act upon AdOne's false representations by agreeing to the advertising arrangement set forth above.

90.     In addition, the e-mails, mailings, and telephone calls described in paragraphs 21-24, 26-28, 30-33, 34-37, 38-40, 42-43, and 45-46, above, were fraudulent in that they falsely confirmed the running of SLS advertising that never actually ran or that only partly ran. Neumann and/or AdOne knowingly made those false statements.

91.     SLS was ignorant that AdOne's representations to it were false at the time AdOne made the representations.     Thus, SLS relied upon AdOne's and Neumann's representations that AdOne would remit payment to the End Advertisers on SLS's behalf and that the above advertisements actually ran as contracted.

92.     SLS was entitled to rely on the representations of AdOne and Neumann that AdOne would pay the End Advertisers and that the advertisements ran as contracted.

93.     SLS's reliance upon AdOne's and Neumann's false representations has consequently and proximately caused injury to SLS. Specifically, SLS has, among other things, lost substantial monies and sales in connection with and as a result of its payments to AdOne for advertising placements that never ran or did not run as contracted.

## COUNT VI
## UNJUST ENRICHMENT
### (Against Defendants Neumann and AdOne)

94.     SLS repeats and realleges each allegation contained in paragraphs 1 through 53, above, as the allegations of this paragraph 94.

19

95.    SLS has conferred a benefit upon AdOne to the extent that AdOne has had

the use of the funds it is required to pay to End Advertisers under contracts with SLS.

96.    AdOne's retention of that benefit is unjust.

97.    SLS has been injured by AdOne's retention of the sums paid to AdOne in

that, without limitation, among other things, SLS has lost substantial monies and sales in

connection with and as a result of its payments to AdOne for advertising placements that never

ran or did not run as contracted.

## PRAYER FOR RELIEF

WHEREFORE, SLS respectfully requests:

a.    a judgment against Neumann and AdOne holding that each violated and is liable to SLS pursuant to the Racketeer Influenced and Corrupt Organizations act;

b.    a judgment against Neumann and AdOne holding that each defendant is liable to SLS as a result of Neumann's and AdOne's fraud, breaches of contract, conversion, and unjust enrichment;

c.    entry of judgment for compensatory damages for Defendants' violations of RICO, plus treble damages, attorney's fees and costs of this action, all provided by statute as a result of Defendants' violations of 18 U.S.C. § 1962:

d.    entry of judgment for damages, together with interest, SLS's attorneys' fees and costs to compensate SLS for Defendants' breach of contracts with SLS;

e.    entry of judgment for damages, together with interest and costs, to compensate SLS for Defendants' conversion;

f.    entry of judgment for damages, together with interest and costs to compensate SLS for Defendants' unjust enrichment and the profits obtained that in equity and good conscience belong to SLS;

20

g.  entry of judgment for exemplary and punitive damages against Defendants and in favor of SLS;

h.  reasonable attorneys fees and costs; and

i.  such other relief as the court may deem just and proper.

Respectfully submitted,

FREEBORN & PETERS LLP

By: /s/ Daniel S. Dooley
Neal H. Levin, Esq.
Daniel S. Dooley, Esq.
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6000
Facsimile: (312) 360-6573
nhlevin@freebornpeters.com
ddooley@freebornpeters.com

HUSCH & EPPENBERGER, LLC

By:
Glennon P. Fogarty # 30934
Michael P. Nolan # 11856
HUSCH & EPPENBERGER, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
(314) 480-1505 facsimile
glennon.fogarty@husch.com
michael.nolan@husch.com

*Attorneys for Plaintiff SLS International, Inc.*

**SERVE AT:**

AdOne Media, Inc.
Attention: Mr. James Neumann, Registered Agent, Officer & Director
618 Spirit Drive, Suite 100
Chesterfield, Missouri 63005

James Neumann
2109 Saddlebred Court
Chesterfield, Missouri 63005-5406

21